IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

VINCENT ELLIOT WILSON,
          Plaintiff,

v.                                      Civil No. 3:22cv572 (DJN)

DEPUTY QUEEN, *et al.*,
          Defendants.

**MEMORANDUM OPINION**

Vincent Elliot Wilson, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court for evaluation of Wilson's Particularized Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons stated below, the Particularized Complaint, (ECF No. 18), and the action will both be DISMISSED.

## I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines that the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. §§ 1915(e)(2); 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va.

---

[1]     The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, the Court accepts a plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). But a plaintiff cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or complaint to survive

2

dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *see Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint, *Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

In addition, Section 1915(d), "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. This "means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke*, 490 U.S. at 327). A court need not "accept as 'having an arguable basis in fact,'. . . all allegations that cannot be rebutted by judicially noticeable facts." *Id.* (quoting *Neitzke*, 490 U.S. at 325). The Court "may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful,' . . . 'fantastic,' . . . and 'delusional.'" *Id.* at 32–33 (quoting *Neitzke*, 490 U.S. at 325, 327–28). As discussed below, a portion of Wilson's underlying allegations "lack[] an arguable basis [both] in law [and] in fact." *Neitzke*, 490 U.S. at 325.

## II.   SUMMARY OF ALLEGATIONS AND CLAIMS

In his Particularized Complaint, Wilson names as Defendants: Deputy Queen, Deputy Hara, Deputy Burrows, Deputy McCue, Deputy Skeikh, and Beth Arthur, the Sheriff of the Arlington County Detention Facility. (ECF No. 16, at 1.) Wilson alleges the following: [2]

1.  Approximately August or September 2021, I gave Defendant Deputy Queen mail to put in the prison mailing system.
2.  The mail was for the "Board of Virginia for local and regional jails."
3.  From my understanding, the Board of Virginia for local and regional jails are suppose[d] to do inspections based off complaints.
4.  My mail never made its destination that I gave to Defendant Deputy Queen, I believe.
5.  I suffered very severe headaches, fevers, heartaches, and body aches.
6.  Approximately September or October 2021, I gave Defendant Deputy Hara mail to put in the prison mailing system for inspection.
7.  The mail was for the Board of Virginia for local and regional jails to come and inspect jail.
8.  My mail never reached its destination, I believe.
9.  Approximately October or November 2021, I gave Defendant Deputy Burrows mail to put in the prison mailing system.
10. The mail was for to get an inspection done on the jail directed towards the Board of Virginia for local and regional jails. It never made its destination.
11. August 2022, I gave Defendant Deputy P. McCue mail with complaints enclosed to put in the prison mailing system.
12. Per Superior Court of the District of Columbia, the complaints never reached its destination that I gave Defendant Deputy P. McCue.
13. October 2022, I gave Defendant Deputy Sheikh mail to put in the jail mailing system.
14. Superior Court of the District of Columbia said that the never received the amended complaints that I gave Defendant Deputy Sheikh for mailing in October 2022 after the 5th.
15. Then the Superior Court of the District of Columbia sent me papers of my most recent events as proof that they didn't receive mail.
16. Deputies here at Arlington County Detention Center tampered with my mail on more than one occasion.
17. I go through emotional distress as a result from the mail tampering.
18. Before I came to the Arlington County Detention Facility, I heard they did a lot of changing and switching around, rearrangement, anticipating what they were going to do to me.

---

[2]   The Court employs the pagination assigned to the Particularized Complaint by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from the Particularized Complaint.

20. Beth Arthur, or the captains, or majors anticipated . . . putting me on a unit that do[es] not have a mailbox the following week upon arrival in July 2021 for over a year.

21. Giving all the housing unit deputies and plenty of other deputies, staff, the opportunity to invade my privacy of all my legal mail, confidentiality, and freedom from censorship.

22. Interfering with me having access to the courts to stop or slow me down from reporting.

23. October 2022, I sent mail in responding to the United States District Court Eastern District of Virginia about initial filing fee which they never got.

24. November 21, 2022, the Eastern District of Virginia court sent me a Memorandum Opinion saying I didn't respond when I did and dismissed my case.

25. I suffered injury from being frustrated.

26. Overall, I was deprived of a mailbox my whole stay at the jail on Unit 11A basically but from my understanding all the other or majority of housing units have mailboxes for the inmates to put their own mail in without hav[ing] to give it the deputies.

(ECF No. 16, at 2–5.) Wilson raises the following claims for relief:

A. First Amendment Claims (Counts I–II)

27. The actions of Defendants Queen, Hara, Burrows, P. McCue, and Sheikh in me giving them my mail and it never making its destination constituted interference for freedom of speech and of the press in violation of the First Amendment. [Claim I (a)]

28. The actions of Defendant Beth Arthur in anticipating my environment before and after I came to the Arlington County Jail placing me on a unit without a mailbox for long so the deputies can have the opportunity to invade my privacy, confidentiality, and censorship constituted interference with access to the courts in violation of the First Amendment. [Claim I (b)]

29. The actions of Defendants Queen, Hara, Burrows, P. McCue, Sheikh, and Beth Arthur in my mail never making its destination because of me wanting the jail to be inspected, report things with the courts, constituted retaliation for petitioning government for redress of grievances and therefore violated the First Amendment. [Claim II]

B. Fourth Amendment Claim (Count III)

30. The actions of Defendants Queen, Hara, Burrows, P. Mcue, and Sheikh in me giving them my mail to put in the jail mailing system and it not making its destination deprived me from being secure in my papers against unreasonable seizures in violation of the Fourth Amendment. [Claim III (a)]

31. The actions of Defendant Beth Arthur to allow and anticipate the rearrangement and a lot of changing the facility around and making me stay on a unit for over a year that doesn't have a mailbox like all of the other

units, so my mail can be confiscated sometimes, constituted security from unwarrantable seizure violation, in violation of the Fourth Amendment. [Claim III (b)]

C. Eighth Amendment (Count IV)

32.   The actions of Defendants Queen, Hara, Burrows, P. McCue, and Sheikh in me giving them my mail and it never reaching its destination because of me wanting the jail inspected, constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. [Claim IV (a)]

33.   The actions of the Defendant Beth Arthur in anticipating what was going to be done to me by changing the Arlington County Detention Facility around and rearranging it before I arrived where's though I don't have access to a mailbox on unit like all the other units so my mail and privacy can be invaded and censor[ed], constituted cruel and unusual punishment as a result in my mail being confiscated violated the Eighth Amendment of the United States Constitution. [Claim IV (b)]

D. Fourteenth Amendment Claims (Counts V–VI)

34.   The actions of Defendants Queen, Hara, Burrows, P. McCue, and Sheikh in me giving them my mail and it never making its destination denying me of having an opportunity to be heard, violated my due process right in violation of the Fourteenth Amendment. [Claim V]

35.   The actions of Defendant Beth Arthur in anticipating the unit that I was housed on for over a year without a mailbox like all the other units, so the deputies and other staff can censor and invade my mail so it wouldn't reach its destination denying me of having the opportunity to be heard and put my own mail in the mailbox like all the other inmates do for confidentiality, violated by rights to Equal Protection and Due Process Clauses in violation of the Fourteenth Amendment to the United States Constitution. [Claim VI]

(*Id.* at 8–10.) Wilson asks for monetary damages. (*Id.* at 10–11.)

## III.   ANALYSIS

### A.   Defendant Arthur

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person

acting under color of state law deprived him or her of a constitutional right or of a right conferred

by a law of the United States. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145

F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). "Government officials may not be held

6

liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676 (citations omitted).   To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Wilson contends that Defendant Arthur is liable for "anticipating the unit that [Wilson] was housed on for over a year without a mailbox like all the other units," because such conduct somehow allowed the other Defendants to violate Wilson's constitutional rights with respect to his mail.  (ECF No. 16, at 10.)  Wilson fails to allege facts that would plausibly suggest that Defendant Arthur was personally involved in his housing assignment.  Instead, it appears that Wilson attempts to impose liability on Defendant Arthur solely because she is the Sheriff for Arlington County and based primarily on *respondeat superior*.  To the extent that Wilson alleges that Defendant Arthur should be held liable under a theory of respondent superior simply based on her position, he fails to state a claim for relief. *Iqbal*, 556 U.S. at 676. [3]

---

[3]      Insofar as Wilson raises any argument that Defendant Arthur is somehow liable on a theory of supervisory liability, that claim would also fail.  To allege a claim that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an

Accordingly, Wilson's claims against Defendant Arthur (Claims I (b), II, III (b), IV (b), and IV) will be DISMISSED for failure to state a claim.[4]

## B.    Claims about Mail to this Court

Wilson contends that in "October 2022, [he] sent mail in responding to [this Court] about [an] initial filing fee which [this Court] never got. [On] November 21, 2022, [this Court] sent [Wilson] a Memorandum Opinion saying that [he] didn't respond when [he] did and dismissed [his] case. [Wilson] suffered injury from being frustrated." (ECF No. 16, at 5 (paragraph numbers omitted).) Wilson fails to identify any individual defendant who was personally involved in the deprivation of his rights with respect to these allegations. That is entirely fatal to any claim arising out of the lost mail sent to this Court. Moreover, even if Wilson suggests that

---

affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). Wilson fails to allege facts supporting any one of these three factors. Accordingly, Wilson fails to state a claim for supervisory liability.

Similarly, to the extent that Wilson attempts to hold Defendant Arthur liable for an unlawful policy or practice, he also fails to state a claim for relief. Wilson must allege that Defendant Arthur deprived him of a constitutional right "through an official policy or custom." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). An unconstitutional official policy or custom

can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id.* (alteration in original) (quoting *Carter*, 164 F.3d at 217). Wilson wholly fails to plausibly suggest any facts giving rise to a claim under any of these theories.

---

[4]     While this dismissal would ordinarily be one without prejudice, for the reasons stated in conjunction with the similar claims against the remaining Defendants, the Court finds that Wilson's claims are entirely lacking in merit, fail to state a claim, and are legally and factually frivolous.

8

the "Defendants" generally are responsible for this conduct, this is insufficient to plead a facially plausible claim against any one named defendant. *See Langford v. Joyner*, 64 4th 122, 126 (4th Cir. 2023) (citation omitted) (refusing to allow a "global manner of pleading" and explaining that courts "require sufficient facts to allow the court to infer liability as to *each* defendant"). Accordingly, any claim arising out of mail sent to this Court in October or November 2022 will be DISMISSED for failure to state a claim.[5]

### C.      First Amendment

#### 1.      Freedom of Speech

In Claim I (a), Wilson contends that "[t]he actions of Defendants Queen, Hara, Burrows, P. McCue, and Sheikh [("Defendants")] in [Wilson] giving them [his] mail and it never making its destination constituted interference for freedom of speech and of the press in violation of the First Amendment." (ECF No. 16, at 8.) As a general matter, prisoners have a First Amendment right to send and receive mail; however, this right is limited in a prison setting. *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1974). Restrictions on this right are valid if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). For example, a prisoner's First Amendment protected interest in corresponding by mail does not

---

[5]      Wilson claims that he sent this Court mail "about an initial filing fee which they never got," and that this Court "sent [him] a Memorandum Opinion saying that [he] didn't respond when [he] did and dismissed [his] case." (ECF No. 16, at 5.) Wilson fails to identify which case he is referencing, and by November 2022, Wilson had at least twelve cases pending in various stages of the *in forma pauperis* process. The Court surmises that Wilson is most likely referring to *Wilson v. Newman*, No. 3:22cv557 (E.D. Va. filed Aug. 17, 2022). In *Wilson v. Newman*, the Court dismissed the action on November 21, 2022, because Wilson failed to respond to the order directing him to pay the filing fee. *See id.* (ECF No. 9, 10). However, the Court received other letters that Wilson mailed during that time in *Wilson v. Newman*, *see id.* (ECF No. 12, at 1), in this case and in his many others. Moreover, after the Court dismissed *Wilson v. Newman* on November 21, 2022, the Court received a letter from Wilson indicating that he could not pay the filing fee. *Id.* (ECF No. 13). Accordingly, any claim based on Wilson's allegations that Defendants tampered with his mail to this Court appears to be baseless and factually frivolous.

preclude prison officials from inspecting the mail to ensure that it does not contain contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

Wilson's claim is difficult to analyze under a typical First Amendment freedom of speech standard, because it is extremely vague. Wilson does not identify a policy or restriction that he believes violated his right to freedom of speech. Rather, Wilson complains that five pieces of mail did not make it to their destination and vaguely suggests that this amounts to mail tampering by each Defendant. It is unclear from Wilson's submissions how he knows that Defendants failed to put his letters in the mail. Indeed, the Court finds it just as likely that the recipient simply did not respond, or the mail was misrouted. With respect to Wilson's three letters to the Board of Virginia for local and regional jails, Wilson states only that he "*believe[s]*" that the mail did not make it to its destination. (ECF No. 16, at 3.) Wilson also cites two amended complaints sent to the D.C. Superior Court, that the D.C. court indicated they did not receive. (ECF No. 16, at 4–5.) Each of the complaints was given to a different Defendant. However, Wilson alleges nothing more than "a sheer possibility that a defendant has acted unlawfully," which is insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). Wilson fails to plausibly allege that the Defendants' violated his right to free speech.

Simply put, to the extent that Wilson alleges that Defendants tampered with his mail, isolated incidents of mail mishandling do not rise to the level of a constitutional violation. *See Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (A "few isolated instances of plaintiff's [legal] mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct . . . were not of constitutional mandate."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citation omitted) ("[A]n isolated incident of mail tampering is usually

insufficient to establish a constitutional violation.").[6]  Accordingly, Wilson fails to state a claim under the First Amendment.  Claim I (a) will be DISMISSED for failure to state a claim and as frivolous.

### 2.    Retaliation

In Claim II, Wilson argues that "[t]he actions of Defendants Queen, Hara, Burrows, P. McCue, Sheikh, and Beth Arthur [resulting] in [Wilson's] mail never making its destination because of [his] wanting the jail to be inspected, [and] report[ing] things with the courts, constituted retaliation for petitioning [the] government for redress of grievances and therefore violated the First Amendment."  (ECF No. 16, at 8.)  Claims of retaliation by inmates are generally treated with skepticism, because "[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds to prisoner misconduct."  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)) (some internal quotation marks omitted).  "[P]laintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal . . . ."  *Adams*, 40 F.3d at 74.  Instead, a plaintiff must allege facts that plausibly show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  *Id.* at 75.

To state a claim for retaliation in violation of the First Amendment, a plaintiff "must allege that (1) [he or] she engaged in protected First Amendment activity, (2) the defendants took

---

[6]      Once in the body of his Second Particularized Complaint, Wilson refers to Defendants' actions as "censorship."  (ECF No. 16, at 5.)  However, the allegation of censorship appears to be directed only toward Defendant Arthur.  (*See id.*)  Moreover, although Wilson vaguely described the Defendants' actions as "censorship," his use of this term is nothing more than a legal conclusion, "which the Court need not take as true under Rule 12(b)(6)."  *Rowe v. Clarke*, 2020 WL 365103, at *10 (E.D. Va. Jan. 22, 2020), *aff'd* 829 F. App'x 634 (4th Cir. 2020).  Thus, any allegation of "censorship" is legally frivolous and fails to state a claim for relief.  *Id.* (citations omitted).

some action that adversely affected [the plaintiff's] First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted). However, as discussed below, Wilson once again alleges nothing more than "a sheer possibility that a defendant has acted unlawfully," and therefore, he has failed to plausibly state a claim for relief. *Francis*, 588 F.3d at 193 (citation omitted).

### a.  Wilson Engaged in a Protected Activity

As to the first factor, the United States Court of Appeals for the Fourth Circuit has held that inmates engage in protected First Amendment activity when they write grievances and file lawsuits. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544–46 (4th Cir. 2017). Certainly, Wilson retains a right to file lawsuits and to write correspondence about the conditions of his confinement, and he therefore satisfies the first factor. However, Wilson's claim falters with the remaining two factors. Wilson claims that Defendants Queen, Hara, and Burrow each failed to mail one letter to the "Board of Virginia for local and regional jails." (ECF No. 16, at 3–4.) Wilson "believe[s]" that his mail "never [reached its] destination." (*Id.*) Wilson also contends that he gave Defendant McCue and Defendant Sheikh mail that contained amended complaints, but that the D.C. Superior Court never received them. (*Id.* at 4.) However, Wilson fails to plausibly allege that Defendants took any retaliatory action against him, or that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Martin v. Duffy*, 977 F.3d 239, 300 (4th Cir. 2020).

### b.  No Adverse Action

With respect to the second factor, "a plaintiff suffers adverse action" for the purposes of a First Amendment retaliation claim "if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights."

*Constantine*, 411 F.3d at 500 (citations omitted).  To satisfy this factor, Wilson must allege facts suggesting that Defendants "conduct resulted in something more than a 'de minimis inconvenience' to [his] exercise of First Amendment rights." *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Constantine*, 411 F.3d at 500).  It is highly unlikely that a prisoner of "ordinary firmness," *Constantine*, 411 F.3d at 500, would stop exercising his First Amendment rights in response to a select few pieces of mail not arriving at their destination, *see Guinn v. Crumpler*, 2020 WL 1666301, \*9 (W.D. Va. Apr. 3, 2020) (finding that a delay in sending legal mail or refusing to give inmate copy of mail log was not a sufficient adverse action but was a small inconvenience).  Nevertheless, the Court acknowledges that "a plaintiff's 'actual response to the retaliatory conduct' is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." *Martin*, 858 F.3d at 250 (quoting *Constantine*, 411 F.3d at 500).  However, despite not being dispositive, "[Wilson's] actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity . . . ." *Constantine*, 411 F.3d at 500.  Here, Wilson continued to litigate the twelve cases filed in this Court, filed at least six more and maintained at least five additional civil cases in the D.C. Superior Court around the same time.[7]  Thus, Wilson experienced nothing more than a *de minimis* inconvenience to his First Amendment rights, not a sufficiently adverse action to establish an actionable retaliation claim.

### c.     No Causal Connection

Finally, with respect to the third factor, Wilson must allege facts indicating that the "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Martin*, 977 F.3d at 300.  Wilson does not even allege that each Defendant was

---

[7]     *See* https://portal-dc.tylertech.cloud/Portal; follow "Smart Search;" then type "Wilson, Vincent" and follow "Submit." (last visited May 4, 2023).

responsible for the mail not arriving at the court or the Virginia agency. Wilson simply alleges that he handed the mail to each Defendant and that the mail failed to reach its destination. Furthermore, Wilson offers nothing more than rank speculation that the failure of his mail to reach its recipients, even if Defendants were responsible, was in any way related to the fact that each piece of mail involved complaints about the facility. At most, Wilson makes a blanket statement that his "mail never ma[de] its destination because of [his requests for] the jail to be inspected[ and his] report[ing] things with the courts." (ECF No. 8, at 12.) This is insufficient to plausibly allege that each Defendant refused to mail his letters, because Wilson was exercising his First Amendment right to complain about conditions in the Arlington County Detention Center. *See Iqbal*, 556 U.S. at 678 (citation omitted) (explaining that "unadorned, the-defendant-harmed-me accusations" are insufficient to plausibly state a claim for relief). To the contrary, Wilson has inundated this Court with complaints about the conditions in that facility.[8]

In sum, Wilson's allegations are nothing more than conclusory complaints of retaliation and therefore fail to state a claim for relief. Accordingly, Claim II will be DISMISSED.

### D. Fourth Amendment Claim

In Claim III (a), Wilson contends that "[t]he actions of Defendants Queen, Hara, Burrows, P. Mcue, and Sheikh in [Wilson] giving them [his] mail to put in the jail mailing system and [the mail] not making its destination deprived [Wilson] from being secure in [his] papers against unreasonable seizures in violation of the Fourth Amendment." (ECF No. 16, at 8–9.) The Court fails to discern, and Wilson fails to explain, how the Fourth Amendment is

---

[8]     Notably, to date, Wilson has filed eighteen separate civil actions in this Court that also complain about various conditions of his confinement in the same facility and name many of the same individuals as defendants. This strongly cuts against any claim that the Defendants retaliated against Wilson by throwing away select pieces of mail that complained about the conditions in the jail.

14

implicated by this conduct as Wilson was not searched and his property was not seized. Nevertheless, "[t]here is no Fourth Amendment right to be free from searches and seizures [of property] in prison." *Crozier v. Endel*, 447 F. App'x 861, 862 (9th Cir. 2011) (citing *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994)); *see Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (explaining that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell"). Accordingly, Claim III (a) will be DISMISSED as legally frivolous and for failure to state a claim.

### E.    Eighth Amendment Claim

In Claim IV (a), Wilson argues that "[t]he actions of Defendants Queen, Hara, Burrows, P. McCue, and Sheikh in [receiving Wilson's] mail and [the mail] never reaching its destination because of [Wilson] wanting the jail inspected, constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." (ECF No. 16, at 9.) Once again, the Court fails to discern, and Wilson wholly fails to explain, how Defendants' actions amount to cruel and unusual punishment.

First, because Wilson was likely a pretrial detainee and not a convicted prisoner when he was subject to these conditions, the Fourteenth Amendment, not the Eighth Amendment, governs his claims of unconstitutional conditions of confinement. *Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013). "Due process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (explaining that "the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to *any* form of punishment") (internal quotations omitted). However, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin*, 849 F.2d at 870 (citation omitted).

15

"The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Id.* at 870. Eighth Amendment jurisprudence "teaches that punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and *substantial* risks of harm." *Westmoreland v. Brown*, 883 F. Supp. 67, 72 (E.D. Va. 1995) (emphasis in original) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)). Additionally, "a particular condition constitutes punishment only where it *causes* physical or mental injury." *Id.* at 76 (emphasis in original). Thus, when a detainee challenges his conditions of confinement, "[t]o successfully assert a claim of punishment without due process under the Fourteenth Amendment, an inmate must assert not only that the defendants were deliberately indifferent to the substantial risk of harm posed by [the challenged condition], but also that this deliberate indifference *caused* a physical or emotional injury." *Id.* (emphasis in original).

The Court need not engage in an extensive analysis of this claim. Wilson fails to allege facts that would plausibly suggest that by "tampering" with his mail on a few occasions, Defendants subjected him to any risk of harm, much less a substantial risk of harm. Accordingly, Claim IV (a) will be DISMISSED as legally frivolous and for failure to state a claim.

### F.   Fourteenth Amendment Claim

In Claim V, Wilson contends that "[t]he actions of Defendants Queen, Hara, Burrows, P. McCue, and Sheikh in [Wilson] giving them [his] mail and it never making its destination denying [him] of having an opportunity to be heard, violated [his] due process right in violation of the Fourteenth Amendment." (ECF No. 16, at 10.) Wilson argues that Defendants were "[i]nterfering with [his] having access to the courts to stop or slow [him] down from reporting." (*Id.* at 5.)

To plead a claim that he was denied access to the courts, a plaintiff must identify with specificity a non-frivolous legal claim that the defendants' actions prevented him from litigating. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996). This requires the "'inmate [to] come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions.'" *Harrell v. Fields*, 2008 WL 110473, at *2 (E.D. Va. Jan. 8, 2008) (quoting *Godfrey v. Washington Cnty., Va., Sheriff*, 2007 WL 2405728, at *13 (W.D. Va. Aug. 17, 2007)).

With respect to his mail to the Board of Virginia for local and regional jails, Wilson concedes that he simply "believe[s]" that Defendants failed to send out his mail. Thus, his allegation is based on nothing more than speculation and conjecture. *See Iqbal*, 556 U.S. at 679 (explaining that "where the well-pleaded facts do permit the court to infer more than the mere possibility of misconduct . . . [the complaint] has not 'shown' — 'that the pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2)). With respect to his mail to the D.C. Superior Court, Wilson contends that the court did not receive the amended complaints that he mailed on October 5, 2022. (ECF No. 16, at 4.) However, "Plaintiff's allegations that he was delayed in filing some paperwork in an unidentified case insufficiently state a claim for denial of access to the courts." *Harrell*, 2008 WL 110473, at *2; *see Taylor v. Manis*, 2021 WL 519903, at *4 (W.D. Va. Feb. 11, 2021) (explaining that a "lack of specificity as to any resulting harm [to ongoing litigation in a specifically identified case] renders his claims subject to dismissal"), *aff'd* 2022 WL 4534270 (4th Cir. 2022).

Because Wilson fails to allege facts that would plausibly suggest that Defendants violated his Fourteenth Amendment due process rights, Claim IV is DISMISSED for failure to state a claim and as legally frivolous.

17

## IV.   CONCLUSION

Wilson's claims will be DISMISSED for failure to state a claim and as legally frivolous.

The action will be DISMISSED.  The Clerk will be DIRECTED to note the disposition of the

action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to

Plaintiff.

                                                              /s/
                                        _____

                                        David J. Novak
                                        United States District Judge

Richmond, Virginia
Dated: May 16, 2023